**THE LAKE NAOMI CLUB, INC. and Timber Trails Community Association, Inc.,**

v.

**MONROE COUNTY BOARD OF ASSESSMENT APPEALS and Monroe County, Appellants.**

Commonwealth Court of Pennsylvania.

Argued April 2, 2001.

Decided Aug. 23, 2001.

Mark S. Love, Tannersville, for appellants.

Janet K. Catina, Stroudsburg, for appellees.

Before McGINLEY, Judge, SMITH, Judge, and JIULIANTE, Senior Judge.

McGINLEY, Judge.

The Monroe County Board of Assessment Appeals (Board) and Monroe County (County) (collectively, Appellant) appeal from an order of the Court of Common Pleas of Monroe County (common pleas court) that reversed the Board's order and directed the Board and the Tax Assessor of Monroe County to comply with the pro-

visions of Section 5105(b)(1) of the Uniform Planned Community Act (Act), 68 Pa.C.S. § 5105(b)(1).[1]

Appellant and the Lake Naomi Club, Inc. (Club) and Timber Trails Community Association, Inc. (Association) (collectively, Appellee) stipulated to the following:

2. Count I of the assessment appeals raises a legal issue regarding whether the ... [Act] is applicable to subdivisions in existence prior to its effective date or only prospectively to new subdivisions.

3. [Club] and [Association] ... are nonprofit corporations organized and existing under the laws of the Commonwealth of Pennsylvania.

4. Both the Association and the Club came into existence prior to February 2, 1997, which is the effective date of [the Act].

. . . .

**Stipulation of Fact And Law**

. . . .

7. The Association owns property in the Timber Trails subdivision, including property with Property Identification Number 19/119136 (the "Property")[2], for which exclusive easement rights and all rights to use the property have been conveyed.

8. The Property is for the exclusive use of the fee-paying members of the Association and the Club, all of which live within the Lake Naomi and Timber Trails subdivisions except approximately twenty-five property owners outside the Lake Naomi and Timber Trails subdivisions who have held memberships since the beginning of the development of the Communities in 1963. Further, employees of the Club are allowed to use the amenities on the Property as part of their compensation; a small number of people who serve the community in a volunteer capacity, such as members of fire, police and ambulance crews are allowed to use the amenities on the Property; and guests of members are allowed to play golf, when accompanied by a member, not more than ten times a year with a fee being assessed to the accompanying members each time the privilege is extended.

9. Prior and subsequent to February 2, 1997, the Property was annually assessed by ... Monroe County and taxes were annually imposed.... There was no change in assessment for the year 2000.

10. The Club filed with ... [the] Board of Assessment Appeals and appeal (the "Appeal") from those assessments for the year 2000. A hearing on the Appeal was held by the Board of Assessment Appeals on October 4, 1999. Subsequently, by letter dated October 19, 1999,[3] the Appeal was denied....

11. *The Timber Trails subdivision is a planned community within definition stated in the [Act], 68 Pa.C.S.A. § 5103.[4]*

---

1. This case was reassigned to the opinion writer on July 16, 2001.

2. The Property is a golf course and was assessed a market value of $51,210.

3. The Letter stated that "[t]he Board of Assessment Appeals in an open meeting has decided that your assessment is in order" and "[t]herefore, the assessment on your property will remain unchanged from that set for the 2000 assessment year." Letter of October 19, 1999, Thomas J. Hill to Lake Naomi Club at 1; Reproduced Record (R.R.) at 4a.

4. Section 5103 of the Act defines "planned community" as:

Real estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement or agreement imposed on the owner's interest to

12. *The Property is both 'controlled facilities' and 'common facilities' within the definitions stated in the [Act], 68 Pa.C.S.A. § 5103.*

13. *The Property is not 'convertible real estate' or 'withdrawable real estate within the definitions stated in the [Act], 68 Pa.C.S.A. § 5103.* (emphasis added).

Stipulation between Lake Naomi Club, Inc., Timber Trails Community Association, Monroe County Board of Assessment Appeals and Monroe County, May 11, 2000, Paragraphs 2–4 and 7–13 at 1–4; R.R. at 13a–16a.

The common pleas court sustained the Club's and the Association's appeal and concluded that the Act prohibited taxation of common or controlled facilities and therefore the Property could not be assessed and taxed separately.

■ On appeal[5] Appellant contends that Section 5105(b) of the Act should not be applied retroactively to all planned com-

munities created prior to the effective date of the Act. Appellant asserts that if the Act is applied retroactively the existing common areas will be removed from the tax rolls and Appellant will be denied a valid assessment.[6]

Section 5105(b) of the Act, 68 Pa.C.S. § 5105(b) provides:

**Taxation and assessment.**—If there is a unit owner other than a declarant, each unit must be separately taxed and assessed. *The value of the unit shall include the value of that unit's appurtenant interest in the common facilities,* excluding convertible or withdrawable real estate. The following shall apply

(1) Except as provided in paragraph (2), *no separate assessed value shall be attributed to and no separate tax shall be imposed against common facilities or controlled facilities.*

(2) Convertible or withdrawable real estate shall be separately taxed and assessed until the expiration of the

---

pay any amount for real property taxes, insurance, maintenance, repair, improvement, management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person. The term excludes a cooperative and a condominium, but a condominium or cooperative may be part of a planned community. For purposes of this definition, 'ownership' includes holding a leasehold interest of more than 20 years, including renewal options, in real estate. The term includes nonresidential campground communities.

**5.** This Court's review in a tax assessment case is limited to a determination of whether the common pleas court's decision is supported by substantial evidence, whether the common pleas court erred as a matter of law or abused its discretion. *Wilkes–Barre Holiday Inn v. Luzerne County Board of Assessment Appeals,* 674 A.2d 1181 (Pa.Cmwlth.1996).

**6.** In Paragraph 4 of the Stipulation, Appellant and Appellee stated that "[t]his Honorable

Court should decide this case on a case stated basis." Appellee contends that this Court does not have jurisdiction to address the merits of this argument because the present matter was submitted to the common pleas court on a "case stated" basis, and Appellant and Appellee sought to have the common pleas court enter a full and final judgment in the matter.

Pa.R.C.P. 1038.2 provides that the "[c]ommon law procedure of a case stated is abolished." The Note to Pa.R.C.P. 1038.2 provides that "[t]he common law procedure of a case stated is no longer required in view of the practice of submitting a case on stipulated facts for decision by a judge without a jury. See Rule 1038.1." Section 705 of the "Fourth to Eighth Class County Assessment Law, Act of May 21, 1963, P.L. 571, *as amended,* 72 P.S. § 5453.705 provides that "[t]he board, or any person party to the appeal to the court of common pleas, may appeal from the judgment order or decree of the court of common pleas in any matter affecting the assessment...."

period during which conversion or withdrawal may occur. (emphasis added).

Further, Section 5103 of the Act, 68 P.S. § 5103 defines the following:

> **"Common facilities."** Any real estate within a planned community which is owned by the association or leased to the association. The term does not include a unit.
>
> . . . .
>
> **"Controlled facilities."** Any real estate within a planned community, whether or not a part of a unit, that is not a common facility but is maintained, improved, repaired, replaced, regulated, managed, insured or controlled by the association.

■ Appellant and Appellee stipulated that the Property qualifies as both a "controlled facilit[y]" and "common facilit[y]" as defined in Section 5103 of the Act, 68 Pa.C.S. § 5103. *See* Stipulation, Paragraph 12. Also, Appellant and Appellee stipulated that the Property is neither "convertible real estate" nor "withdrawable real estate." Here, the language of Section 5105 of the Act is unambiguous. Appellant "shall" not attribute an assessed value to the Property or impose a separate tax against the Property. "By definition, 'shall' is mandatory . . . [and][a]ccordingly, there is no room to overlook the statute's plain language to reach a different result." *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 205, 696 A.2d 148 (1997), *citing Coretsky v. Bd. Of Commissioners*, 520 Pa. 513, 518, 555 A.2d 72, 74 (1989).

■ However, Appellant asserts that Section 5105 of the Act must not be applied retroactively to planned communities created prior to the effective date of the Act. This Court rejects this argument.

Section 5102 of the Act, 68 Pa.C.S. § 5102 provides:

> **(a) General rule.**—This subpart applies to all planned communities created within this Commonwealth after the effective date of this subpart;
>
> . . . .
>
> **(b) Retroactivity.**—Except as provided in subsection (c), sectio[n] 5105 . . . to the extent necessary in construing any of those sections, apply to all planned communities created in this Commonwealth before the effective date of this subpart; *but those sections apply only with respect to events and circumstances occurring after the effective date of this subpart and do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities.* (emphasis added).

Again, Section 5102(b) of the Act is unambiguous. Firstly, the effective date of the Act was February 2, 1997, (the Act became law on December 19, 1996, and became effective forty-five days later). Secondly, Appellant and Appellee stipulated that Appellee is a planned community created prior to the effective date of the Act. *See* Stipulation, Paragraph 4. Thirdly, all relevant events, namely that the questioned tax assessment was in 1999 and was applied to the calendar year 2000, took place subsequent to the effective date of Act. Lastly, each annual assessment and each annual imposition of a tax is a separate event. Therefore, Section 5102(b) of the Act controls. Section 1921 of the Statutory Construction Act, 1 Pa.C.S. § 1921 provides that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing the law."

Next, Appellant contends that the term "only with respect to events and circumstances occurring after the effective date of this subpart", found in Section 5102(b)

of the Act, must be construed to require a countywide assessment, at which time the County shall comply with the Act "to include the value of that unit's appurtenant interest in the common facilities" so that each unit is accurately and "separately taxed and assessed." *See* Section 5105(b) of the Act.

Appellant's interpretation of Section 5102(b) is flawed based upon the clear language of Section 5105(b)(1) of the Act. Appellant may not attribute a separate value to a common facility.

Accordingly, we affirm.[7]

### ORDER

AND NOW, this 23rd day of August, 2001, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is affirmed.

SMITH, Judge, Dissenting.

I dissent from the Majority's decision to affirm the order of the Court of Common Pleas of Monroe County, which required

7. Appellee contends that they are entitled to counsel fees. Pa.R.A.P. 2744 provides that "an appellate court may award ... reasonable counsel fees ... if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Our review of the record and the briefs fail to establish any such conduct on the part of Appellant, and we deny Appellee's request.

1. Section 5105(b)(1) prohibits the imposition of real estate taxes on common facilities or on controlled facilities in a planned community, and the Act applies retroactively to a planned community created in the Commonwealth prior to the effective date of the Act so long as the events and circumstances affecting the planned community occurred after the effective date of the Act. *See* Section 5102(b) of the Act, *as amended,* 68 Pa.C.S. § 5102(b).

2. Section 5103 of the Act, as amended 68 Pa.C.S. § 5103, defines a "planned communi-

the Monroe County Board of Assessment Appeals and the Tax Assessor of Monroe County to comply with the explicit provisions of Section 5105(b)(1) of the Uniform Planned Community Act (Act), 68 Pa.C.S. § 5105(b)(1).[1] The order resulted in the striking of the separate real estate tax assessment by Monroe County for the 2000 tax year on the Timber Trails golf course and related common amenities and facilities within the Timber Trails subdivision, a planned community.[2]

The question presented in this appeal is whether Section 5105(b)(1) of the Act applies retroactively to planned communities created in the Commonwealth prior to the effective date of the Act on February 2, 1997. Appellants correctly note that this case involves the continued real estate tax assessment treatment of the Timber Trails golf course and that the question of the taxability of the Owners' golf course was decided prior to enactment of the Act in *Timber Trails Community Ass'n v. County of Monroe,* 150 Pa.Cmwlth. 29, 614 A.2d 342 (1992).[3] The Majority does not cite

ty" as real estate with respect to which persons holding an ownership interest in any portion of the real estate are or may become liable by covenant, easement or agreement to pay an amount for taxes and other expenses for parts of the property other than those parts solely owned by the persons. The Act defines "common facilities" as any real estate within a planned community, which is either owned or leased by the association, and does not include a unit designated for separate ownership or occupancy. *Id.* "Controlled facilities" are defined as any real estate in a planned community which is not a common facility but is maintained, improved, repaired, replaced, regulated or otherwise controlled by an association. A controlled facility may or may not be part of a unit. *Id.*

3. The Court, sitting *en banc,* held in *Timber Trails Community Ass'n* that the Owners' golf course had value for tax assessment purposes for the 1989 and 1990 tax years because the property owners had non-exclusive easement

*Timber Trails Community Ass'n* nor the case relied upon by the trial court, *E.L.C.A. Development Corp. v. Lackawanna County Board of Assessment Appeals,* 752 A.2d 466 (Pa.Cmwlth.2000).

The parties stipulated that Count I of the Owners' assessment appeal raised a legal issue of whether the Act applies retroactively to subdivisions in existence before the effective date of the Act. They also stipulated that the Timber Trails subdivision is a planned community; that the Owners and the golf course existed before the effective date of the Act; that the golf course was assessed annually before and after the effective date of the Act; that the property represents both common facilities and controlled facilities; and that the property is neither convertible nor withdrawal real estate pursuant to Section 5105(b)(2). Based on the parties' stipulation, the trial court concluded that this matter was controlled by the Court's decision in *E.L.C.A. Development Corp.* and reasoned that the tax assessment against the Owners' golf course violated the Act's

prohibition against taxation of common or controlled facilities.

I agree with Appellants' initial argument that the Act should not apply retroactively to the tax assessment against the Owners' property in this case because the assessment represents an event that occurred prior to the effective date of the Act. The Act requires an event or occurrence that occurs after the effective date of the Act, which represents some thing or happening as distinguished from something that already exists.[4] I agree as well that the trial court erred in relying on *E.L.C.A. Development Corp.* because the issue of retroactivity of the Act was not directly addressed in that case. The issue before the trial court and before this Court on appeal by taxpayers from real estate tax assessments for 1998 and thereafter was whether the assessed property was convertible and/or withdrawable real estate.[5]

Appellants are correct that the Court must interpret the retroactivity provision of Section 5105 of the Act consistently with the rules of statutory construction, principally the rules that the Legislature does

rights to the common area golf course, which extended golf membership to individuals who were not lot owners. The golf course was assessed a market value of $51,210, and Appellants were assessed taxes against the golf course before and after the effective date of the Act. The assessment resulted from a countywide assessment of all properties effective for the 1989 tax year.

**4.** *See* Black's Law Dictionary (4th Ed.1968) ("event" connotes something that comes to pass and an "occurrence" connotes an incident or event that happens without design or expectation).

**5.** Convertible real estate refers to that portion of a flexible community which is not within a building containing a unit, within which additional units, limited common or controlled facilities or any combination thereof may be created, and withdrawable real estate refers to real estate which may be withdrawn from a

flexible planned community. *See* 68 Pa.C.S. § 5103. Convertible or withdrawable property is separately assessed and taxed until it is no longer convertible or withdrawable. 68 Pa.C.S. § 5105(b)(2).

In *E.L.C.A. Development Corp.* the Court reversed the trial court's determination that the six subject parcels of land were not exempt from separate assessment and taxation because the properties were convertible and/or withdrawable real estate. The Court ruled that the parcels were not convertible or withdrawable real estate merely because members of the association could at some future time vote to sell common area real estate, but they were instead common or controlled areas not separately assessable or taxable under the Act. If any parcels were sold or developed with additional units or limited common or controlled facilities, then at that time they could be separately assessed and taxed.

not intend an absurd or unreasonable result or a violation of the constitution and favors the public interest against any private interest. Section 1922(1), (3) and (5) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1), (3) and (5). For this Court to logically apply the retroactivity provisions of the Act there must be some event or occurrence, which did not exist or occur on a routine or regular basis before and after the effective date of the Act. The County's regular assessment and taxation of real property is not such an event or occurrence.

I therefore agree with Appellants that the only logical construction of Section 5102(b) of the Act would be the requirement of a countywide reassessment, an event or occurrence after the effective date of the Act. At that time Monroe County could delete the Timber Trails golf course from the tax rolls and add value to the individual owners' units. The Act provides that each unit in a planned community constitutes a separate parcel of real estate, including rights to any common facilities, and the unit's value shall include the value of the unit's interest in common facilities. *See* 68 Pa.C.S. §§ 5105(a), 5105(b). Because the trial court erred in ruling that the County's tax assessment for the year 2000 violated the Act's prohibition against the taxation of common or of controlled facilities in planned communities, the court's order should be reversed and the decision of the Board reinstated.